O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA ARELLANO,<br><br>                Plaintiff,<br><br>      vs.<br><br>MICHAEL J. ASTRUE, Commissioner<br>of Social Security Administration,<br><br>                Defendant. | CASE NO. ED CV 08-00733 (RZ)<br><br>MEMORANDUM OPINION<br>AND ORDER |

        Plaintiff asserts five errors in the Administrative Law Judge's decision denying her application for Title II disability benefits, but four of those five hinge on one contention, that the Administrative Law Judge wrongly assessed the perspective of the consulting psychiatrist. The Administrative Law Judge found that Plaintiff suffered from a variety of physical impairments, but he found no severe impairment before Plaintiff's disability insurance expired in March 1999. [AR 468] When he evaluated Plaintiff's mental capacity, he stated that his assessment was not inconsistent with that of the consulting psychiatrist Dr. Morton Kurland. [AR 467] This is the primary focus of this case.

        Dr. Kurland evaluated Plaintiff on October 4, 2000, finding in part as follows:

It would seem that this woman believes that she is incapable of any kind of productive activity. It is difficult to ascertain, however, whether her inability to function is related to her alleged depression or whether it is related to her inability to understand things and to focus things and to even understand the language, even though she told me she has been living in the United States for thirty-five years since she was fifteen years old and still hasn't been able to fathom the complexities of the English language.

    1)    She appears to have difficulty doing any kind of detailed or complex tasks and I wouldn't think that this would change or has changed in many years.

    2)    She might very well have difficulty maintaining regular attendance at anything because she was late for the appointment, she doesn't get up in the morning unless somebody awakens her.

    3)    It is hard for her to be consistent in any way.

    4)    She would probably require somebody to tell her what to do in even simple tasks.

    5)    I doubt if she could complete a normal work day or a work week without complaining about her back and her shoulder pain which in some stretched way are her psychiatric problems.

    6)    She probably can't understand instructions unless given in Spanish.

> 7) I think she does interact with the public and some other people reasonably well, of course assuming she understands them in her own language.
>
> 8) I doubt that she could deal with any kind of stress in any meaningful way.

[AR 247-48] Dr. Kurland went on to say that "[h]er mood or affect appeared to be somewhat flattened, but did not appear to be overwhelming or even depressed. [AR 248] He diagnosed her with "dsythymia, moderate, untreated," referencing category 300.4 from the DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (DSM-IV). [AR 249]

The Administrative Law Judge said that "regarding the claimant's allegations of depression" Dr. Kurland's opinion was not inconsistent with his own findings. Noting that Plaintiff must have become disabled before March 31, 1999 in order to receive benefits, the Administrative Law Judge stated that Plaintiff acknowledged that she did not begin to have "significant symptoms of depression" until after she had an hysterectomy in 2000. This, he further found, was consistent with the medical records because there were no treatment records prior to 2001 and no psychiatric evaluation prior to 2000. [AR 467]

Perhaps if the reference to depression means "clinical depression," the Administrative Law Judge's statement could be stretched to be true, that his findings were not inconsistent with the opinion of Dr. Kurland, for Dr. Kurland did state that Plaintiff's mood or affect "did not appear to be overwhelming or even depressed." [AR 248] But Plaintiff herself surely did not think of "depression" in such clinical terms, and Dr. Kurland, despite this statement, did diagnose Plaintiff with moderate dysthymia. According to the DSM-IV, "[t]he essential feature of Dysthymic Disorder is a chronically depressed mood that occurs for most of the day more days than not for at least 2 years (Criterion A)." DSM-IV at 345. In the face of this diagnosis, together with the other comments of Dr. Kurland listed above, it cannot reasonably be said that his assessment is not inconsistent with the findings of the Administrative Law Judge.

The Administrative Law Judge then was obligated to provide specific reasons for not accepting Dr. Kurland's assessment, if he in fact was to disregard it. Having stated that it was not inconsistent, he did not do so. In this Court, the Commissioner defends the Administrative Law Judge's decision by giving reasons that Dr. Kurland's limitations should not be accepted. Where the Administrative Law Judge has not himself given those reasons, however, the Commissioner may not rely on them in this Court. *Ceguerra v. Secretary of Health and Human Services*, 933 F.2d 735, 738 (9th Cir. 1991).

The Commissioner first asserts, as did the Administrative Law Judge, that Plaintiff's symptoms did not appear until after her hysterectomy in 2000, which was after her entitlement to disability benefits expired. This assertion, however, is at odds with Dr. Kurland's assessment that Plaintiff "appears to have difficulty doing any kind of detailed or complex tasks and I wouldn't think that this would change or has changed in many years." [AR 247] It also is not consistent with the characteristics of the diagnosed dysthymia, which requires the depressed mood to have been present for a period of two years. Thus, if Dr. Kurland's opinion is to be accepted, then Plaintiff had a dysthymic disorder prior to the time her disability insurance entitlement expired.

The Commissioner next says, however, that Dr. Kurland's analysis had "limited, if any, probative value as to the nature and severity of Plaintiff's impairment" prior to the expiration of insurance coverage, because Dr. Kurland's examination took place eighteen months after the expiration of such coverage. (Defendant's Memorandum in Support of Answer at 4:5-14.) Presumably, however, the Department of Social Services did not think it was engaging in an idle (and costly) act when it asked Dr. Kurland to conduct a psychiatric evaluation. *See* 20 C.F.R. § 404.1519a ("When we will purchase a consultative examination and how we will use it.") The Department of Social Services having purchased such a consultation, the Commissioner cannot be heard to complain on the basis that the consultant would not have anything relevant to say.

In this Court, the Commissioner also refers to language in two cases, *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1995) and *Marci v. Chater*, 93 F.3d 540, 545 (9th

Cir. 1996), suggesting that the opinion of a psychiatrist who examines a claimant after insurance coverage has expired is not reliable. As noted, presumably the Social Security Administration, in authorizing such consultations, disagrees. Moreover, neither of these cases establishes a broad rule against the sort of analysis made by Dr. Kurland. In *Vincent*, the Administrative Law Judge was justified in not considering a letter by the psychiatrist, who had examined the claimant earlier but not after a stroke, and the letter gave the psychiatrist's conclusions based on reviewing the reports of others which themselves were before the Administrative Law Judge. It was in this context that the Court referred to law that "after-the-fact psychiatric diagnoses are notoriously unreliable." 739 F.2d at 1395. In *Marci*, the opinions of the psychiatrist were submitted after the Administrative Law Judge made his decision, and the Court, in finding them unreliable, referenced the ruling of another case, *Lombardo v. Schweiker*, 749 F.2d 565, 567 (9th Cir. 1984) (*per curiam*), for the proposition that the opinion of a psychiatrist after the period of insurance has expired carries less weight than the opinion in a contemporary assessment.

These cases do not establish a rule which makes post-date-last-insured psychiatric opinions unreliable. Indeed, they would not do so because the Ninth Circuit has established a general rule to the contrary. Thus, the Ninth Circuit has squarely said that "[t]he rule in this circuit, as in most circuits, is that 'reports containing observations made after the period for disability are relevant to assess the claimant's disability.'" *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988), *citing Kemp v. Weinberger*, 522 F.2d 967, 969 (9th Cir. 1975); *see also McNabb v. Barnhart*, 340 F.3d 943 (9th Cir. 2003). Moreover, Dr. Kurland's assessment was not "after the fact" in one important sense: he concluded that Plaintiff *presently* suffered from dysthymia, and his comments indicated that he thought she had likely had symptoms for some time before his evaluation.

The Commissioner also says that the Administrative Law Judge incorporated the decision from a prior hearing, and in that earlier decision the Administrative Law Judge ruled that Dr. Kurland's conclusions were not supported by the record, contradicted his findings, and were based on an incomplete examination. (Defendant's Memorandum in

Support of Answer, 4:17-20) But the decision under review now did not reject Dr. Kurland's evaluation; it found, to the contrary, that the evaluation was not inconsistent with the decision. Moreover, a consultant is used for precisely some of the purposes identified by the prior Administrative Law Judge in rejecting Dr. Kurland's opinion. Thus the regulations state that

> A consultative medical examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim. Other situations . . . will normally require a consultative examination:
>
> (1) The additional evidence needed is not contained in the records of your medical sources;
>
> . . .
>
> (4) A conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved, and we are unable to do so by recontacting your medical source; . . . .

20 C.F.R. § 404.1519a. Even if the Administrative Law Judge could both find Dr. Kurland's evaluation not inconsistent with his own and still reject it, therefore, the basis for rejecting it which the Commissioner identifies in this Court would not be persuasive.

Accordingly, the Administrative Law Judge erred when he ruled that Plaintiff did not have a severe mental impairment, and when he did not take into consideration limitations identified by Dr. Kurland. As a result, the hypothetical questions presented to the vocational expert were incomplete, and the expert's testimony, on which the Administrative Law Judge relied, cannot supply sufficient evidence to back the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001). The Court therefore, reluctantly, must remand the matter once more, for the record does not contain sufficient evidence to

establish whether, assuming Dr. Kurland's limitations are accepted, there is sufficient available work for someone of Plaintiff's capacity.

Because the matter must be remanded, the Court need not address Plaintiff's other claimed error, that the Administrative Law Judge did not sufficiently identify his reasons for not completely believing Plaintiff.

The Commissioner's decision is reversed, and the matter is remanded to the Commissioner for further proceedings consistent with this opinion.

DATED: March 13, 2009

```
                                    _____
                                            RALPH ZAREFSKY
                                    UNITED STATES MAGISTRATE JUDGE
```